UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 24-cr-20597
        Honorable Linda V. Parker

SERVEO NEWELL,

        Defendant.
_____/

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT UNDER
THE SECOND AMENDMENT (ECF NO. 16)**

Defendant Serveo Newell ("Defendant") is charged in a one-count Indictment with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 11.)  The matter is before the Court on Defendant's motion to dismiss the Indictment on Second Amendment grounds.  (ECF No. 16.)  Defendant argues that § 922(g)(1) is facially unconstitutional and unconstitutional as applied to him.  He also argues that the Sixth Circuit's interpretation of the statute renders it unconstitutionally overbroad and vague.  The United States opposes Defendant's motion.  (ECF No. 18.)  For the reasons set forth below, the Court denies it.

### I. SECOND AMENDMENT FRAMEWORK

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court established a two-step framework for analyzing whether an individual's Second Amendment rights were violated and held that the regulation of those rights must be consistent with the "Nation's historical tradition of firearm regulations." *Id*. at 17.

To assess the constitutionality of a firearms regulation under the new framework in *Bruen*, the Court must follow a two-step approach. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 17. Second, when a regulation burdens such presumptively protected conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

### *Bruen* Analysis of § 922(g)(1)

The Sixth Circuit Court of Appeals recently clarified the impact of *Bruen* on Sixth Circuit precedent concerning the constitutionality of § 922(g)(1) in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). The *Williams* court began its

*Bruen* analysis by thoroughly reviewing the plain text of the Second Amendment. *Id.* at 648-650.

The court rejected the argument that usage of terms such as "law-abiding" and "responsible" in *Bruen* and earlier Supreme Court case law justify barring felons from exercising their Second Amendment rights. *Id.* at 645-647. Instead, the court pointed to *Heller*'s direct assertion that the right to bear arms "belongs to all Americans" and not an "unspecified subset." *Id.* at 646 (citing *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008)). Ultimately, the Sixth Circuit found that the Second Amendment presumptively protects a felon's right to possess a firearm and thus, passed to the second step of the *Bruen* analysis. *Id.* at 649.

The court then conducted an extensive historical analysis, as required by *Bruen*, and reached the conclusion that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." 113 F.4th at 657. The Sixth Circuit found that in light of the nation's history and tradition, "most applications of § 922(g)(1) are constitutional" and the statute is constitutional on its face and "as applied to dangerous people." *Id.* at 646. However, the court left open the possibility of an as-applied challenge should a defendant prove he is not dangerous "and thus falls outside of § 922(g)(1)'s

3

constitutionally permissible scope[.]" *Id.* It is the role of the district court to make this dangerousness determination.

### *Williams* Framework

The *Williams* court then provided three categories under which to view a defendant's past conduct to guide the dangerousness analysis. In the first category are crimes against the person, such as "murder, rape, assault, and robbery." *Williams*, 113 F.4th at 658. The court noted that a history of violent crimes like these are "strong evidence that an individual is dangerous." *Id.* In the second category are crimes that, "while not strictly crimes against the person, may nonetheless pose a significant threat of danger," such as drug trafficking and burglary. *Id.* at 659. The court also implied that a prior conviction for felon in possession of a firearm falls into this second category. *Id.* at 662. The court stated that convictions for these crimes will often "put someone's safety at risk, and thus, justify a finding of danger." *Id*. at 659. The court emphasized that a person who falls into the first two categories will have a very difficult time showing he or she is not dangerous. *Id.*

In the final category are "crimes that cause no physical harm to another person or the community," such as mail fraud and making false statements. *Id.* The court stated that these cases are a "more difficult category," but that district

4

courts will likely "have no trouble concluding that many of these crimes don't make a person dangerous." *Id.*

When evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record—not just the specific felony underlying the § 922(g)(1) charge. *Id.* Courts may also consider any evidence of past convictions in the record, as well as other judicially noticeable information, when assessing a defendant's dangerousness. *Id.* at 660. However, the question of what information is relevant to determine dangerousness and the weight to give such evidence was intentionally left open by *Williams*.

Nevertheless, the Sixth Circuit compared the assessment to dangerousness determinations made under 18 U.S.C. §§ 3142 and 3553. *Id.* at 657. The dangerousness determination must be "fact-specific, depending on the unique circumstances of the individual defendant." *Id.* at 661. The defendant bears the "extremely heavy" burden of showing that he is not dangerous. *Id.* at 658, 662.

Since *Williams*, when determining dangerousness, the Sixth Circuit has considered both the conduct which led to the defendant's § 922(g)(1) charge and whether the defendant was on supervised release when he or she accumulated the charge. *See United States v. Vaughn*, No. 23-5790, 2024 WL 4615853 at *2 n.2 (6th Cir. Oct. 30, 2024) (concluding that "[t]he fact that Vaughn's § 922(g)(1) conviction resulted from an incident where he shot at an individual certainly would

5

lend to a showing of his dangerousness"); *see also United States v. Goins*, 118 F.4th 794, 798 (6th Cir. 2024) (finding disarming individuals on parole, probation, or supervised release to be consistent with the nation's history and tradition).

## II.     ANALYSIS

As stated earlier, Defendant claims § 922(g)(1) is unconstitutional on its face and as applied to him. He also argues that *Williams*' interpretation of the statute renders it unconstitutionally vague and overbroad.

### Facial Challenge

As a threshold matter, *Williams* forecloses Defendant's facial challenge to § 922(g)(1). 113 F.4th at 657. Defendant argues that the Sixth Circuit erred in finding the statute constitutional on its face; however, this Court is bound to follow the appellate court's ruling. *See Hutto v. Davis*, 454 U.S. 370, 374-75 (1982) (emphasizing that courts must follow "the federal court system created by the Constitution and Congress).

### As-Applied Challenge

As to Defendant's as-applied challenge, applying *Williams* to the facts of this case, the Court finds that he is dangerous and can be constitutionally disarmed.

Defendant has prior convictions falling in the first and second *Williams*' categories. He has one prior conviction for assault and/or battery. *See* Viol. Report, *United States v. Sewell*, No. 20-20116 (E.D. Mich. Oct. 20, 2022), ECF

No. 26 at PageID. 176-77.  Defendant punched the driver of a vehicle after he and the driver were involved in a motor vehicle accident.  (*Id.*).  While Defendant was convicted of misdemeanor assault, rather than a felony, the conduct still involved violence against another person, which falls within *Williams*' category one.  Moreover, Defendant was on supervised release for a felony conviction at the time.  *See United States v. Clay*, No. 24-cr-20358, 2025 WL 36157, at *2 (E.D. Mich. Jan. 6, 2025) (Parker, J.) (citing *Goins*, 118 F.4th 794) (considering relevant to a finding of dangerousness that the defendant was on supervised released when he accumulated the § 922(g)(1) charge).

Defendant also has a prior federal felony conviction for receiving a firearm with an obliterated serial number—which he possessed as a felon and while on probation.  Plea Agreement, *United States v. Newell*, No. 20-cr-20116 (E.D. Mich. May 19, 2020), ECF No. 20.  This conviction falls within *Williams*' second category, and particular circumstances concerning the firearm further lead to a finding of dangerousness.  Specifically, the gun had been used in a murder two months before Defendant was found in possession of it, and shell casings recovered at the scene from a second gun had Defendant's DNA on them.  Gov't Sentencing Mem., *id.* (E.D. Mich. Aug. 20, 2020), ECF No. 24 at PageID. 158; (ECF No. 19 at PageID. 89-132).  Defendant was on a tether at the time of the murder.  Gov't Sentencing Mem., *United States v. Newell*, No. 20-20116 (E.D.

Mich. Aug. 20, 2020), ECF No. 20 at PageID. 160; (ECF No. 18 at PageID. 134). GPS monitoring reported movement at the time of the murder; however, Newell's whereabouts could not be determined. *Id.* When officers searched Newell's residence, they found pieces of tin foil in the size and shape of the tether, which they confirmed from a Michigan Department of Corrections' agent could disrupt a GPS signal when placed over a tether. Gov't Sentencing Mem., *United States v. Newell*, No. 20-20116 (E.D. Mich. Aug. 20, 2020), ECF No. 24 at PageID. 160-61.

While on supervised release for the above conviction, Defendant committed and was convicted of the assault discussed earlier. Order, *id.* (E.D. Mich. Sept. 13, 2022), ECF No. 26. He also was arrested for attempting to smuggle marijuana, cigarettes, a bottle with a false bottom to conceal contraband, 24 cell phones, and other items into the Milan Federal Correctional Institute. *Id.* The Honorable Bernard A. Friedman sentenced Defendant to 24 months in prison based on the first violation.[1] Judgment, *id.* (E.D. Mich. Oct. 20, 2022), ECF No. 33. Judge Friedman found Defendant to be "a total danger to this community." Tr., *id.* (E.D. Mich. Nov. 22, 2022), ECF No. 36 at PageID. 207.

---

[1] If Judge Friedman sentenced Defendant to more than a year in prison, the Government agreed to not bring additional felony charges against him for the attempted smuggling. *See* Tr., *United States v. Sewell*, No. 20-cr-20116 (E.D. Mich. Nov. 22, 2022), ECF No. 36 at PageID. 201.

Defendant absconded while serving this sentence and remained an escapee for four months, until police officers arrested him with the loaded weapon which led to the current Indictment. (ECF No. 18 at PageID. 139.) During this encounter, Defendant attempted to flee on foot from the officers. (*Id.* at PageID. 3-4.)

This Court and other judges in this district have found that *Williams*' second category likely includes being a felon in possession of a firearm. *See, e.g., Clay*, 2025 WL 36157, at * 2; *United States v. Johnson*, No. 23-cr-20569, 2025 WL 226957, at *4 (E.D. Mich. Jan. 16, 2025) (DeClercq, J.). Additionally, "[f]leeing from police while in possession of a firearm involves conduct dangerous to the officers and the public." *United States v. Brown*, No. 24-20227, 2024 WL 5161946, at *4 (E.D. Mich. Dec. 18, 2024) (Behm, J.) (collecting cases).

After carefully considering Defendant's prior criminal record and the facts underlying the current charge, the Court finds the application of § 922(g)(1) to him constitutional. Defendant offers no compelling evidence or argument to undermine a finding of dangerousness. In addition to the danger posed by the Defendant's prior conduct, his number of prior convictions, the recency of his last conviction, and the fact that several convictions occurred while he was on probation or an escapee status all support a finding of dangerousness. Accordingly, Defendant's as-applied challenge also fails.

## Overbreadth and Vagueness

"A criminal statute is unconstitutionally vague if it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012). However, "[t]he void-for-vagueness doctrine . . . focuses on the actions of Congress, not the other branches." *United States v. Lopez*, 929 F.3d 783, 785 (6th Cir. 2019). As judges in this District have explained in rejecting vagueness challenges to § 922(g)(1) based on *Williams*' interpretation, vagueness is a doctrine that applies to statutes, not to interpretations by a court. *United States v. Bell*, -- F. Supp. 3d --, 2024 WL 4589812, at *6-7 (E.D. Mich. Oct. 28, 2024) (Drain, J.) (finding that no authority seems to exist "for the proposition that a *judicial ruling* pertaining to a statute can make the statute unconstitutionally vague"); *United States v. Jennings*, -- F. Supp. 3d --, 2024 WL 4560602, at *6 (E.D. Mich. Oct. 24, 2024) (Berg, J.); *see also United States v. Nelson*, No. 23-cr-20566, 2025 WL 581454, at *2 (E.D. Mich. Feb. 21, 2025) (Behm, J.); *United States v. Flores*, No. 24-cr-20579, 2025 WL 348390, at *2 (E.D. Mich. Jan. 30, 2025) (Edmunds, J.). And overbreadth challenges apply to the First, not the Second, Amendment. *See United States v. Huff*, 630 F. App'x 471, 487 (6th Cir. 2015) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) ("The

Supreme Court has 'not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment.'").

Moreover, as Judge Drain found in *Bell*, "there is no question that § 922(g)(1) is clear on its face. It proscribes a felon from possessing a firearm." 2024 WL 4589812, at *6 (citing *United States v. Smith*, 770 F. App'x 955, 960 (11th Cir. 2019) (holding that "the plain language of § 922(g)(2) makes it clear" that it is unlawful for a felon to possess a firearm that has moved in interstate commerce; this is "straightforward and sufficient to provide fair warning of the proscribed conduct.")). Further, when applied to dangerous people, the Sixth Circuit held that § 922(g)(1) is constitutional and, therefore, not void or vague. *Williams*, 113 F.4th at 662-63. As discussed earlier, this holding is binding on this Court and must be applied.

### III.   CONCLUSION

For the reasons discussed, the Court rejects Defendant's facial, as-applied, void for vagueness, and overbreadth challenges to § 922(g)(1). The Indictment is not subject to dismissal on Second Amendment grounds.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (ECF No. 16) is

**DENIED**.

                                              s/ Linda V. Parker
                                              LINDA V. PARKER
                                              U.S. DISTRICT JUDGE

Dated: March 18, 2025